# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIMBERLY G. POPLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-343-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Kimberly G. Poplin requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 15, 1983, and was twenty-seven years old at the time of the administrative hearing (Tr. 41). She completed the eleventh grade and earned her GED, and her past relevant work is not classified in the record (Tr. 29, 159). The claimant alleges that she has been unable to work since June 1, 2007, due to anxiety, trichotillomania, and chronic pain syndrome (Tr. 155-159).

## Procedural History

On December 7, 2009, the claimant applied for benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Daniel Curran conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 2, 2012 (Tr. 16-30). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, and additionally stated that she retained the ability to understand, remember, and carry out simple instructions and make judgments that are commensurate with the functions of unskilled work, such as making simple work-related decisions,

responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting (Tr. 21). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled according to Rule 204.00 of the Medical-Vocational Guidelines, *i. e.*, "the Grids" (Tr. 29).

## Review

The claimant contends that the ALJ erred: (i) by improperly rejecting the opinion of consultative examiner, Beth Jeffries, Ph.D.; and (ii) by improperly rejecting mental function limitations imposed by the state reviewing physicians. Because the ALJ did fail to properly assess Dr. Jeffries' opinion as well as the opinion of treating physician Dr. Stephen Greer, the decision of the Commissioner should be reversed.

The ALJ found that the claimant's bipolar disorder, panic disorder, post-traumatic stress disorder, history of trichotillomania and dissociative identity disorder were severe impairments (Tr. 18). The medical evidence relevant to this appeal reveals treatment records from Stephen Greer, M.D., during the time frame of October 2007 through October 2011. Dr. Greer treated the claimant for chronic back pain, panic disorder and agoraphobia, PTSD and dissociative identity disorder due to past abuse, and bipolar II, and treatment involved regular counseling sessions (Tr. 334). Treatment notes reflect counseling as well as medication management (Tr. 356-365). In December 2011, Dr. Greer completed a Mental Medical Source Statement, in which he indicated that the claimant had (i) severe limitations in the ability to carry out detailed instructions, to perform activities within a schedule, maintain regular attendance, and be punctual within

-4-

customary tolerances, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (ii) marked limitations in the ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others; and (ii) moderate limitations in the ability to understand and remember very short and simple instructions, to sustain an ordinary routine without special supervision, to make simple work-related decisions, to accept instructions and respond appropriately to criticism from supervisors, and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes (Tr. 335-337). He noted her physical and mental problems, concluding that although her mood instability was intermittent, it was severe at times, and that stress and the need for consistency tended to exacerbate her condition. He further stated that although she might be capable of working at times, she would not be able to do so with consistency over time (Tr. 338).

Dr. Jeffries conducted a mental status examination of the claimant on April 3, 2010 (Tr. 281). Dr. Jeffries noted that the claimant's thought process was tangential; that she reported seeing demons, angels, and UFOs; and that she was "fairly manic during the exam and reported racing thoughts and it appeared that her thoughts were racing during this exam" (Tr. 282). Dr. Jeffries further stated that the claimant was a "little bit difficult to redirect," and that she at times demonstrates both grandiose thinking and low self-

esteem problems (Tr. 282). Dr. Jeffries' diagnostic impression was: (i) Axis I – trichotillomania, by history, bipolar disorder, provisional; (ii) Axis II – deferred, (iii) Axis III – per medical evaluation; and (iv) Axis IV – history of childhood sexual abuse (Tr. 283). Her prognosis and recommendations included the opinion that it was possible her symptoms interfered with her ability to perform occupationally, and stated:

> Given her age I think it is possible that her symptoms could improve with continued treatment and continued motivation and therapy although I think it is likely that she will experience these symptoms chronically perhaps throughout the course of her life. She appears to be manic at this time and I think she would find it very difficult to perform well in most occupational settings, both in terms of her ability to receive information, to understand what is being asked of her, and then to perform it, as well as to interact socially with customers and certainly with bosses.

(Tr. 283-284).

On May 5, 2010, Cynthia Kampschaefer, Psy.D., completed a Psychiatric Review Technique (PRT) form, indicating that the claimant had moderate limitations in the areas of functional limitation and no episodes of decompensation of extended duration (Tr. 303). In an analysis of the evidence, Dr. Kampschaefer quoted Dr. Jeffries' assessment and diagnosis (Tr. 305). In the more detailed Mental RFC assessment, Dr. Kampschaefer indicated that the claimant was markedly limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 307-308). She stated that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, could not relate to the general public, but could adapt to a work situation (Tr. 309). On November 15, 2010, Janice B. Smith, Ph.D., completed a PRT and Mental RFC

assessment. She reiterated the same moderate functional limitations on the PRT form (Tr. 327). The record at that time did not contain Dr. Greer's treating notes, and Dr. Smith thus stated that there was insufficient evidence that her mental condition had existed for at least a year and that the claimant appeared capable of simple work (Tr. 329). As to the mental RFC assessment, she indicated that the claimant was markedly limited in the same three areas Dr. Kampschaefer indicated, and moderately limited in the ability to maintain attention and concentration for extended periods (Tr. 313-314).

In his written opinion, the ALJ extensively summarized the claimant's testimony and her medical records. In discussing the opinion evidence, the ALJ thoroughly summarized Dr. Jeffries' report but failed to provide any analysis or assign any weight with regard to her assessment (Tr. 29). He then found that Dr. Greer's assessment was not supported by other medical evidence in the record (without specifying which evidence) and that his assessment was also internally consistent because he noted the claimant was "stable on her meds" and the claimant's episodes were only intermittent (Tr. 25). He noted but did not address Dr. Greer's assessment that although the claimant may be capable of working, she could not do so consistently over time (Tr. 24). He then determined that the claimant was not credible and adopted the opinions of the state reviewing physicians who found the claimant capable of performing simple, unskilled work, even though they did not have the benefit of Dr. Greer's records (Tr. 29).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors

in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a thorough summary of both Dr. Jeffries and Dr. Greer's reports, but provided no analysis at all of Dr. Jeffries' report in relation to the pertinent factors. Additionally, he rejected Dr. Greer's opinion to the extent it conflicted with the RFC finding because he stated it was inconsistent with the record as a whole, but made no indication of how it was inconsistent (particularly in light of the fact that Dr. Greer was the only treating physician in the record), and ignored evidence from Dr. Greer that supported his ultimate assessment. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin*, 365 F.3d at 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235,

1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'"). These are significant omissions because *both* Dr. Jeffries and Dr. Greer questioned the claimant's ability to consistently maintain employment over time.

Because the ALJ failed to properly evaluate the opinions of Dr. Jeffries and Dr. Greer, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ. If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**